**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **O'BRIEN LYNCH,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. CJC-25-1647** |
| **JALAPENO TACO, LLC,** | * | |
| **Defendant.** | * | |

# MEMORANDUM OPINION

Plaintiff O'Brien Lynch was assaulted with a firearm in a fast-food restaurant parking lot by a restaurant employee. Plaintiff later filed suit against Defendant Jalapeno Taco, LLC, the owner of the restaurant, for negligent hiring and retention, alleging that Defendant had breached its duty to use reasonable care when it knew or should have known the employee had a criminal history.[1] Defendant removed Plaintiff's lawsuit to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a). Now pending is Defendant's Motion for Summary Judgment (the "Motion"). ECF No. 28. The Motion is fully briefed, ECF No. 30, and no hearing is necessary. Loc. R. 105.6.

[1] Plaintiff also alleged a claim for intentional infliction of emotional distress, ECF No. 4 at 6, but later abandoned that claim in his response in opposition to the present motion. ECF No. 30 at 1.

## FACTUAL BACKGROUND[2]

On August 8, 2022, Plaintiff walked into a Taco Bell[3] restaurant located in Baltimore City, approached the front counter, and asserted that he had received the wrong order. ECF No. 30-4 at 44:5–9; 48:3–19. Restaurant shift supervisor Danielle McCaskill offered Plaintiff a refund or a new taco.[4] *Id.* at 54:9–15. After Plaintiff rejected both options, restaurant employee Dayquan Harding directed Plaintiff to leave. *Id.* at 57:1–16. Plaintiff exited the restaurant and went to his vehicle. *Id.* at 60:2–12. As Danielle McCaskill left the counter to return to her office within the restaurant, Mr. Harding "went out to the front of the store." *Id.* at 65:17–22. Sometime after Mr. Harding returned to the restaurant, the police arrived and asked Danielle McCaskill if she had seen an employee with a handgun. *Id.* at 61:10–22; 62:18–63:1. Thereafter, police "were looking … for the handgun that was supposedly pointed at the customer [Plaintiff], and they had arrested [Mr. Harding], and they arrested another employee." *Id.* at 71:8–15. Mr. Harding was charged and pleaded guilty to first-degree assault, use of a firearm in the commission of a crime of violence or felony, and possession of a firearm after having been convicted of a crime of violence or drug-related crime. *State v. Harding*, Crim. Action No. 122244003 (Balt. City Cir. Ct. 2022).

Defendant has moved for summary judgment on two grounds. First, Defendant argues that Plaintiff's negligent hiring and retention claim must fail because Plaintiff cannot prove two required elements: that Defendant had actual or constructive knowledge of Mr. Harding's

---

[2] The facts set out in this section are undisputed and drawn from the deposition testimony of Danielle McCaskill, a former Jalapeno Taco, LLC employee, attached to Defendant's Motion for Summary Judgment. ECF No. 30-4. Both parties provided only a brief recitation of facts and neither party cited any admissible evidence.

[3] Defendant is the owner of the Taco Bell restaurant referenced in this matter.

[4] Because of their shared last names, the undersigned will refer to deponents Danielle McCaskill and DeShawna McCaskill by their first and last names.

incompetence and that Defendant was negligent in hiring and retaining Mr. Harding and thus was the proximate cause of Plaintiff's injuries. ECF No. 28-2 at 6. Second, Defendant argues that there is no evidence in the record to support any element of Plaintiff's intentional infliction of emotional distress claim. Specifically, Defendant argues that Plaintiff lacks evidence establishing that Mr. Harding's conduct and its effects are attributable to Defendant rather than Mr. Harding himself. ECF No. 28-2 at 10–14.

For the reasons set forth below, the Court finds that Plaintiff's negligent hiring and retention claim fails because the undisputed facts demonstrate that Plaintiff cannot prove that Defendant had actual or constructive knowledge of Mr. Harding's incompetence, or that Defendant breached the duty of care it owed to Plaintiff. Furthermore, because Plaintiff withdrew his intentional infliction of emotional distress claim, the Court will construe that withdrawal as a request for leave to amend the Amended Complaint under Federal Rule of Civil Procedure 15(a)(2) and grant that request.[5] The claim is therefore withdrawn.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In other words, summary judgment is appropriate when the evidence 'is so one-sided that one party must prevail as a matter

---

[5] Although Rule 41(a)(2) permits voluntary dismissal of an action, Rule 15(a)(2) is the appropriate procedural vehicle for withdrawing individual claims. *See Skinner v. First Am. Bank of Va.*, 64 F.3d 659, 1995 WL 507264, at *2 (4th Cir. Aug. 28, 1995) (unpublished table decision) ("Because Rule 41 provides for the dismissal of *actions*, rather than *claims*, Rule 15 is technically the proper vehicle to accomplish a partial dismissal."); *Stormfield Cap. Funding I, LLC v. Monster Invs., Inc.*, Civil Action No. DKC-23-3244, 2025 WL 3140343, at *2 (D. Md. Nov. 10, 2025) (construing a motion to voluntarily dismiss individual claims under Rule 41(a)(2) as a motion to amend under Rule 15(a)(2)).

of law.'" *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 959 (4th Cir. 2022) (citation omitted). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (citation omitted). A genuine dispute over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, to demonstrate a genuine dispute of material fact, the nonmoving party must present sufficient evidence for a reasonable jury to rule in their favor on each essential element of their claim. *See id.*

Trial courts in the Fourth Circuit have an "'affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citing *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

## DISCUSSION

Plaintiff alleges that Defendant breached its duty to protect him, a business invitee, by using due care to hire and retain a competent employee. *See generally* ECF No. 30-1. Defendant argues that summary judgment is warranted because Plaintiff has failed to produce evidence that it had knowledge of the employee's incompetence or that it breached any duty. ECF No. 28-2 at 6–10. Specifically, Defendant asserts that it had neither actual nor constructive knowledge that Mr.

Harding was "unfit" for his position and the available evidence demonstrates that Mr. Harding was a good employee. *See* ECF No. 28-2 at 9–10. Further, without evidence to rebut the presumption that Defendant used due care in hiring Mr. Harding, and that the duty should have included an inquiry into his criminal history, Defendant contends that Plaintiff cannot meet his burden of proof on the essential elements of a negligent hiring and retention claim. *Id.* at 7–9.

Plaintiff argues in a conclusory fashion that disputes of material fact exist which preclude summary judgment in Defendant's favor. ECF No. 30-1 at 11. Plaintiff points to "the evidence not in dispute, elicited during the course of discovery if viewed in the light most favorable to the Plaintiff" as material sufficient to establish genuine disputes of fact; however, he fails to proffer admissible evidence that rebuts Defendant's arguments. *Id.*

As noted above, the Court must consider the facts and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff as the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569–70 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). "Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility." *Dominant Invs. 113, LLC v. United States Liab. Ins. Co.*, 247 F. Supp. 3d 696, 700 (D. Md.), *aff'd*, 707 F. App'x 155 (4th Cir. 2017) (citing *Tolan v. Cotton*, 572 U.S. 650, 656–60 (2014)).

Maryland law governs resolution of Plaintiff's negligence claim. In an action brought under a federal court's diversity jurisdiction, the court is to apply the substantive law of the state in which

it sits. *Mathis v. Terra Renewal Servs. Inc.*, 69 F.4th 236, 242 (4th Cir. 2023); *Lewis v. Waletzky*, 422 Md. 647, 657 (2011). To prevail on a negligent hiring or retention claim under Maryland law, the Plaintiff must demonstrate: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Asphalt & Concrete Servs., Inc. v. Perry*, 221 Md. App. 235, 256 (2015), *aff'd*, 447 Md. 31 (2016); *see also Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 805 (D. Md. 2022).

Here, three of the above elements are not in dispute: (1) the existence of an employment relationship, (2) the employee's incompetence, and (4) the employee's act or omission causing plaintiff's injuries. Therefore, the Court will focus its analysis on the two remaining elements: whether Defendant had actual or constructive knowledge of the employee's incompetence, and whether any negligence on Defendant's part in hiring or retaining the employee was the proximate cause of Plaintiff's injuries. Each element is discussed in turn below.

## I. Whether Defendant had actual or constructive knowledge of Mr. Harding's incompetence

Plaintiff has presented no evidence demonstrating Defendant possessed actual or constructive knowledge of Mr. Harding's incompetence at the time of his hiring or thereafter. Actual or constructive knowledge is established when an employer has, for instance, received prior complaints regarding the employee or was aware of behavior indicative of the employee's incompetence. *Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 808 (D. Md. 2022) ("Defendants may have also been aware of complaints of employee conduct by the number of lawsuits filed against them."); *Fidelity First Home Morg. Co. v. Williams*, 208 Md. App. 180, 199–200 (2012) (concluding that reasonable jurors could find employer who knew employee "was willing to forge

documents" and "was caught forging documents on three occasions" was negligent in hiring and supervising employee who later committed fraud); *see Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 181 (2004) (finding no allegations that employees had previously acted incompetently or unprofessionally or that, even if they had, that employer knew or should have known).

General allegations that a defendant "hired an individual with a criminal history" does not create a triable issue of fact concerning actual or constructive knowledge of an employee's incompetence. *Morris v. King Oak Enters., Inc.*, Civil Action No. AAQ-24-0782, 2024 WL 4476303, at *7–8 (D. Md. Oct. 11, 2024) (declining to enter default judgment for negligent retention and supervision because general allegations concerning employee's "well-documented criminal record" and "criminal propensities" were insufficient to establish defendant's actual or constructive knowledge).

Here, viewing the evidence in the light most favorable to Plaintiff, there is no evidence that Defendant had actual or constructive knowledge of Mr. Harding's incompetence. To the contrary, shift supervisor Danielle McCaskill testified that Mr. Harding was a good employee who "always came in and did his job with no problems, and he was always on time. He really didn't give us any problems …." ECF No. 30-4 at 26:10–17, 79:13–80:3 ("[He] was a good employee, … he always came extra early[,] … [h]e always had his uniform[,] … [I] never had to question [Mr. Harding]."). Both Danielle McCaskill and Assistant Manager DeShawna McCaskill testified that they had received no complaints from customers or employees concerning Mr. Harding, and they had never witnessed him being angry or threatening. ECF Nos. 30-4 at 42:16–43:18; 30-5 at 54:11–18, 55:15–19. Rather, Mr. Harding was "quiet," he "didn't really talk much" but "just came

and did his job and went [about] his day." ECF Nos. 30-5 at 52:13–18; 30-4 at 79:13–80:3. Mr. Harding's worst misconduct was for a uniform infraction. ECF No. 30-5 at 54:19–55:4.

While DeShawna McCaskill testified that Mr. Harding was occasionally "a little short-tempered" towards fellow employees as they argued over "who should be doing what and stuff like that," she also testified that "he never really showed … aggression to anybody." ECF No. 30-5 at 68:13–69:15. And although Mr. Harding did at some point inform DeShawna McCaskill and General Manager Blanche Ratliff that he was "on probation" and "had just been released from prison," DeShawna McCaskill did not know what he was on probation for and did not conduct any further inquiries. ECF No. 30-5 at 65:12–20, 65:21–66:6.[6]

No reasonable jury evaluating the evidence presented could conclude that Defendant had actual or constructive knowledge of Mr. Harding's incompetence. *Evans v. Morsell*, 284 Md. 160, 168 (1978) (holding that there was no evidence tavern owner knew or should have known that bartender was dangerous because owner made reasonable inquiries into bartender's background when he obtained favorable reference from prior owner and he had personally interacted with bartender). First, Plaintiff admits there is no evidence concerning Mr. Harding's hiring. ECF No. 30-1 at 7. None of the three restaurant employees deposed were involved in his hiring. ECF Nos. 30-5 at 52:2–4; 30-4 at 25:6–9; 30-6 at 37:15–38:3. There is no evidence regarding whether Mr. Harding voluntarily disclosed his criminal history at the time of hiring or if the unnamed individual

---

[6] An employer's knowledge that an employee has a criminal record or was recently incarcerated does not, standing alone, establish actual or constructive knowledge of the employee's incompetence. *See Evans v. Morsell*, 284 Md. 160, 167 n.4 (1978) ("[E]ven where the employer knows of a criminal record and still hires the employee, this does not automatically make out a prima facie case of negligent hiring.") (citing *Strawder v. Harrall*, 251 So. 2d 514, 518 (La. Ct. App. 1971) (finding no negligent hiring where the employer knew the employee was on parole from prison)). *See infra* Section II at 11–12 (discussing the circumstances under which an employer may have a duty to investigate an employee's criminal history).

who hired him otherwise asked. Second, the fact that Defendant "hired an individual with a criminal history" does not establish actual or constructive knowledge of Mr. Harding's incompetence. *Morris*, 2024 WL 4476303, at *7–8.[7] Defendant's supervisory employees received no complaints and never witnessed Mr. Harding acting aggressively or violently. *Karn*, 590 F. Supp. 3d at 808; *Loveless v. Estevez*, No. 1985, Sept. Term 2017, 2019 WL 4187465, at *12 (Md. Ct. Spec. App. Sept. 3, 2019); *Fidelity First Home Morg. Co.*, 208 Md. App. at 199; *Williams v. Coppin State Univ.*, Civil Action No. JRR-23-2590, 2024 WL 3904676, at *12 (D. Md. Aug. 22, 2024). Third, although DeShawna McCaskill at some point learned that Mr. Harding was on probation, she had already been working with Mr. Harding and had no knowledge of the circumstances of Mr. Harding's conviction or release. *See Evans*, 395 A.2d at 484 n.4 ("[E]ven where the employer knows of a criminal record and still hires the employee, this does not automatically make out a prima facie case of negligent hiring. Instead, it depends upon the nature of the criminal record and the surrounding circumstances."). And Danielle McCaskill did not know whether Mr. Harding had been convicted of any crimes. ECF No. 30-4 at 78:13–17. None of the evidence elicited during discovery could lead a reasonable juror to conclude that Defendant possessed knowledge of Mr. Harding's incompetence.

Plaintiff's opposition to Defendant's Motion for Summary Judgment conflates the two elements of negligent hiring and retention at issue: whether the employer had actual or constructive knowledge of the employee's incompetence and whether the employer's negligence in hiring or

---

[7] The Court notes that Plaintiff has not presented any evidence concerning Mr. Harding's prior convictions. *Garwood v. Walmart, Inc.*, Civil Action No. SAG-22-1029, 2023 WL 8529122, at *9 (D. Md. Dec. 8, 2023) ("[T]his Court notes that Plaintiffs have not offered any actual evidence of [employee's] prior conviction"). Appended as Exhibit A to Plaintiff's Response in Opposition to the Motion for Summary Judgment is a search result from the Maryland Judiciary Case Search & Record Portal for the name Dayquan Harding. ECF No. 30-3. The results are not limited to criminal cases, and the criminal cases listed do not illustrate the charges, convictions, or dates of disposition.

retaining the employee was the proximate cause of the plaintiff's injuries. For example, in his response, Plaintiff states Defendant "didn't know of Mr. Harding's violent criminal convictions because they did not ask, they did not look, and they did not ask and did not look because they didn't want to know." ECF No. 30-1 at 10. Plaintiff appears to concede that Defendant had no actual or constructive knowledge, rather arguing that Defendant should have inquired under the circumstances. ECF No. 30-1 at 10–11 (citing understaffing shifts, rehiring fired employees, failing to distribute employee handbooks, and requiring quick turnaround on orders, to argue that a fact-finder could conclude "Defendant created this high stress environment and had zero concern for the people they placed in the pressure-cooker"). But whether Defendant should have inquired into Mr. Harding's criminal history, and whether that should have precluded his employment, relates to Defendant's duty. It has no relevance to Defendant's actual or constructive knowledge of Mr. Harding's incompetence. Mere conclusory statements expressing disagreement with Defendant's position, without supporting evidence, do not create triable issues of fact and are not sufficient to survive a motion for summary judgment. *See Anderson*, 477 U.S. at 248 (the nonmoving party may not rely upon mere allegations or denials of allegations in pleadings to defeat a motion for summary judgment).

## II. Whether Defendant was negligent in hiring and retaining Mr. Harding, and whether any such negligence was the proximate cause of Plaintiff's injuries

Defendant is not the proximate cause of Plaintiff's injuries because it did not breach its duty to use due care in hiring its employees when it did not inquire into Mr. Harding's criminal history. Proximate cause requires evidence of "two links in the causal chain": first, the employer's failure to make a reasonable inquiry must lead to the negligent hiring and retention, and second, the plaintiff's injuries must be a foreseeable result of the employer's negligence. *Pizarro Orta v. Creekstone Landscaping & Excavating, LLC*, Civil Action No. EA-23-1954, 2024 WL 3555093,

at *5 (D. Md. July 25, 2024) (citing *Cramer v. Housing Opportunities Comm'n of Montgomery Cnty.*, 304 Md. 705, 713 (1985) and *Mitchell v. Rite Aid of Md., Inc.*, 257 Md. App. 273, 320 (2023)). "An employer is obligated 'to the public to use due care in selecting and retaining only competent and careful employees.'" *State v. Jones*, 197 Md. App. 638, 669–70 (2011), *rev'd on other grounds*, 425 Md. 1 (2012) (citing *Henley v. Prince George's Cnty.*, 60 Md. App. 24, 36 (1984)). Employers must "make some reasonable inquiry before hiring or retaining the employee to ascertain his fitness, or the employer must otherwise have some basis for believing that he can rely on the employee.... The nature and extent of the inquiry that is needed will naturally vary with the circumstances." *Horridge*, 382 Md. at 181 (internal citations and quotations omitted); *Evans*, 284 Md. at 167. "For example, with respect to an employee's intentional torts, 'the critical standard is whether the employer knew or should have known that the individual was potentially dangerous.'" *Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 3d 392, 419 (D. Md. 2022) (quoting *Jordan v. Western Distributing Co.*, 135 F. App'x 582, 589 (4th Cir. 2005))

The employer benefits from a rebuttable presumption that it has used due care in the hiring of an employee. *See Jarvis v. Securitas Sec. Servs. USA, Inc.*, Civil Action No. AW-11-0654, 2012 WL 527597, at *6 (D. Md. Feb. 16, 2012) (quoting *Horridge*, 382 Md. at 181). Ordinarily, there is no requirement that an employer inquire into a prospective employee's criminal record. *Evans*, 284 Md. at 167 (customer who was shot by bartender could not recover from tavern owner for negligent hiring because, although owner did not know bartender had prior conviction for assault, there was no evidence tavern owner knew or should have known bartender was dangerous because owner had previously known bartender and received positive reference from prior employer); *Finley Alexander Wealth Mgmt., LLC v. M & O Mktg., Inc.*, Civil Action No. GJH-19-1312, 2023 WL 2163176, at *9 (D. Md. Feb. 21, 2023) (citing *Evans* in rejecting the argument that a marketing

company's failure to investigate its executive's criminal history, which included gun and drug felonies, constituted failure to make a reasonable inquiry before hiring). This is, in part, because "when one has completed a criminal sentence or has been paroled, the employer to some extent is entitled to rely upon the determination of the government's criminal justice system that the individual is ready to again become an active member of society." *Evans*, 284 Md. at 167.

Certain exceptions may create an obligation to inquire into an employee's criminal record "depending upon the sensitivity of the position, the nature of the past criminal conduct, and the surrounding circumstances." *Id.* at 167 n.5. For instance, "where the work involves a serious risk of harm if the employee is unfit, as in the hiring of a police officer, there is no presumption of competence and there may well exist a duty to conduct a criminal record investigation." *Cramer*, 304 Md. at 716; *see Henley v. Prince George's Cnty.*, 60 Md. App. at 38 (citing a Texas decision suggesting that a duty to investigate may arise when hiring security guards); *but see Athas v. Hill*, 300 Md. 133, 149 (1984) (finding employer had no duty to inquire into employee's criminal record but only to make a reasonable inquiry or otherwise have a sufficient basis for relying on employee's capability and highlighting that employee, a chef, was not hired to deal with the public). And if an employer *does* know about an employee's criminal record and still hires them, whether this constitutes negligent hiring "depends upon the nature of the criminal record and the surrounding circumstances." *Morris*, 2024 WL 4476303, at *7 (quoting *Evans*, 284 Md. at 167 n.4).

Mr. Harding was a food preparer at the restaurant. ECF No. 30-5 at 54:5–10. He "never really ever did the register," but rather "all he did, was the cleaning and the food prep." ECF No. 30-4 at 31:13–32:6. There is no evidence concerning the circumstances of Mr. Harding's hiring as a food preparer. While the evidence in the record establishes that Defendant did not inquire into Mr. Harding's criminal history, Plaintiff proffers no evidence to rebut the presumption that

Defendant used due care in making a reasonable inquiry or otherwise had a basis for concluding Mr. Harding was competent to work in the kitchen as a food preparer. *Horridge*, 382 Md. at 181; *Evans*, 284 Md. at 167. While there is testimony that Mr. Harding told DeShawna McCaskill and Blanche Ratliff that he was "on probation" and "had just been released from prison," ECF No. 30-5 at 65:12–20, there is also testimony from both Danielle McCaskill and DeShawna McCaskill that Mr. Harding generated no complaints. ECF Nos. 30-4 at 42:16–43:9; 30-5 at 54:11–18, 55:15–19. In fact, Danielle McCaskill testified that she worked closely with Mr. Harding—she trained him, and he normally worked on her shift. ECF No. 30-4 at 25:6–9, 30:10–31:11. While she did not know whether Mr. Harding had been convicted of any crimes, her experience working with him led her to conclude he was a good employee. ECF No. 30-4 at 78:13–17, 26:10–17, 79:13–80:3 ("[H]e was a good employee, … [h]e always came extra early [,] … [h]e always had his uniform[,] … [I] never had to question [Mr. Harding]."). Personal experience may help form a reasonable basis for concluding that an employee is competent. *See Evans*, 284 Md. at 167.

Furthermore, four deponents testified that it was the restaurant's policy that individuals applying for hourly positions such as Mr. Harding's are not asked about their criminal history or subject to a background check. ECF Nos. 30-5 at 78:10–79:15; 30-4 at 77:19–78:11; 30-6 at 25:16–26:3; 28-4 at 43:11–44:16. And Plaintiff concedes that "public policy has reduced the prevalence of criminal background checks in many employment fields and jurisdictions …." ECF No. 30-1 at 5. But the conclusory argument that follows, that had Defendant done "any kind of screening, had they at least asked if [Mr. Harding] felt equipped to address customer concerns in this tense environment," Mr. Harding would not have been hired, lacks any evidentiary basis. ECF No. 30-1 at 11. As with the prior element, Plaintiff must show "more than … some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corop.*, 475 U.S. 574, 586

(1986). Without proffering admissible evidence to rebut the presumption that Defendant used due care in hiring and retaining Mr. Harding, Plaintiff cannot create a triable issue of fact on this element.

Plaintiff cannot prove that Defendant knew of Mr. Harding's incompetence or that it breached its duty to him under Maryland law, and no reasonable factfinder could find in Plaintiff's favor. Furthermore, because Plaintiff voluntarily dismissed his intentional infliction of emotional distress claim, the Court need not reach the issue. Accordingly, Defendant is entitled to summary judgment on Plaintiff's negligent hiring and retention claim.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Defendant Jalapeno Taco, LLC's Motion for Summary Judgment as to Count I, the negligent hiring and retention claim, and DENIES the Motion as to Count II, the intentional infliction of emotional distress claim. Count II of Plaintiff's Amended Complaint is withdrawn. A separate Order follows.

Date: November 24, 2026

/s/
Chelsea J. Crawford
United States Magistrate Judge